**PASOTEX PIPE LINE CO. v. MURRAY.**

**No. 12271.**

Circuit Court of Appeals, Fifth Circuit.

June 22, 1948.

Rehearing Denied July 23, 1948.

J. F. Hulse, of El Paso, Tex., and William L. Kerr, of Midland, Tex., for appellant.

John J. Watts, of Odessa, Tex., for appellee.

Before HOLMES, WALLER and LEE, Circuit Judges.

LEE, Circuit Judge.

This is the second appeal in this case. The first was from an order directing a verdict for the defendant, appellee then, appellant now. The facts are set forth in our previous opinion, 5 Cir., 161 F.2d 5. On that appeal three points were in issue, only one of which it was necessary for us to decide. Holding that under Texas law the Pasotex Pipe Line Company would have been liable for its employee Chenoweth's negligence if in the exercise of reasonable care it should have known that he was an habitual drunkard, and that this issue should have been submitted to the jury, we remanded the case for a new trial of Chenoweth's incompetence and the company's knowledge thereof, as well as its knowledge of the defective condition of the accelerator in the car. On remand, a new trial was had which resulted in a verdict in the sum of $35,000 for the plaintiff.

The company now appeals from the judgment entered upon that verdict and bases its right to reversal chiefly upon two irregularities which it claims were prejudicial to it: (1) The improper conduct of the plaintiff's counsel in direct and cross-examination of witnesses, in persisting in asking questions which had been ruled inadmissible by the court and in making prejudicial statements with reference to matters ruled inadmissible by the court, in defiance of the court. (2) The error of the court in overruling defendant's motion for a new trial on the grounds of newly discovered evidence.

The appellant says that in the course of a cross-examination of Dr. McClure, one of defendant's witnesses, plaintiff's counsel, upon Dr. McClure's testifying that the X-ray pictures of Mrs. Murray failed to show any ruptured disc, asked Mr. McClure: "If Dr. Carroll of Dallas looked at these X-rays and said she had it, what do you say?", at the same time extending toward the witness, in the presence of the jury, a typewritten paper resembling a letter. Upon defend-

ant's objection, the question was ruled out. Thereupon plaintiff's counsel asked the witness: "Would you like to see Dr. Carroll's report?" again extending the paper toward him. Objection to this was also sustained by the court. Whereupon plaintiff's counsel said: "We want the record to show we tendered the report." Appellant claims that all this was calculated to give the jury the impression that Dr. Carroll, who was not present to testify, had reported that Mrs. Murray did have a ruptured disc, which question of rupture was a matter in dispute.

The motion for a new trial on the basis of newly discovered evidence also had to do with this supposed report of Dr. Carroll. Defendant's attorneys in moving for a new trial set up as ground therefor that following the trial and verdict plaintiff's attorney told them that Dr. Carroll's report would have shown that Mrs. Murray had none of the fractures which plaintiff's doctors testified that she did have; that prior to the trial they had no knowledge that Dr. Carroll had ever examined Mrs. Murray; and that in view of the disputed testimony they were entitled to a new trial to show Dr. Carroll's report.

Appellant further complains of plaintiff's counsel's cross-examination of Dr. Mason, witness for defendant, when he asked, "Doctor, who is the outstanding surgeon in El Paso?" The question was objected to and the objection sustained. Whereupon plaintiff's counsel said, in the presence of the jury, "Note our exception for the reason it is in evidence that this lady is being treated by Dr. Rogers, and we think we are entitled to prove his qualifications to this jury." Appellant further objects that on cross-examination of Dr. Breck plaintiff's counsel asked the witness, "Doctor, you are well acquainted with Dr. Perry Rogers, are you not?", the answer being, "Yes, I am." Thereupon plaintiff's counsel asked, "He holds the same high certificate in orthopedic surgery in El Paso that you do, doesn't he?", which was objected to and objection sustained. Whereupon plaintiff's counsel said: "He did treat this case and put a brace on this lady, did he not?" Objection to this was likewise sustained. Appellant contends that by such comment plaintiff's counsel gave the jury the impres-

sion that Dr. Rogers, who was not a witness was an outstanding bone surgeon who had treated Mrs. Murray and put a brace on her, a method of putting before the court testimony inadmissible in that form. Again, on cross-examination of Dr. Robinson, a witness for defendant, plaintiff's counsel asked the doctor about his work for insurance companies; this, appellant argues, injected into the case an inference that the defendant was covered by insurance. A like objection was made to the cross-examination by plaintiff's attorney of Dr. McClure, defendant's witness, during which plaintiff's counsel asked the doctor, "And they [insurance companies] pay off total and permanent disability for a ruptured disc?", to which objection was made and sustained. Appellant argues that this question also left the inference with the jury that the defendant was covered by insurance, and that under Texas law any reference to coverage by insurance in a damage suit is prejudicial error.

■■ At the time each incident arose, the trial judge had full knowledge of all the circumstances connected with it and was in the best position to judge whether or not any or all of the incidents were calculated adversely to affect the defendant's substantive rights. Since the matter was squarely presented to him at once upon the occurrence of each incident complained of, in a way that called for his immediate consideration of it in terms of the defendant's substantive rights, it is clear that each time he fully exercised his discretion, as he did also with respect to the motions made at the close of all the evidence. In exercising that discretion the court, as a precautionary measure, each time carefully instructed the jury to ignore the occurrence and to give no weight to it. Whether a mistrial should have been entered or a new trial granted, was, upon motion for either, a matter within the discretion of the trial judge, and in view of all the circumstances here, we may not say that that discretion was abused. He was in better position to judge than are we. As to the oblique references to insurance, we think they are not of such a kind as to come within the prohibition of Texas law.

In sustaining the court's action, however, we would not be thought to condone the tactics of plaintiff's attorney. We think that at times they bordered on the unethical, and had the trial judge, in all circumstances of the trial and having all the facts before him, held these tactics to be prejudicial, we should have sustained him.

Appellant's contention that the court erred in refusing a new trial on the ground of newly discovered evidence rests not only upon the fact discussed above, that only after trial did its attorneys learn the facts of Dr. Carroll's report, but it rests also upon the further fact that only after the trial was one Samuel P. Atkins, the former husband of Mrs. Murray, found. Atkins meantime had given an affidavit to the effect that Mrs. Murray, when she was Mrs. Atkins, had told him that she had injured her coccyx, or tail bone, as a child. Appellant insists that it had no knowledge of the existence of such proof of a prior injury. The X-ray showed an anomalous condition of the tail bone, and of course the plaintiff contended upon the trial that that condition was an injury caused by the accident sued upon. Appellant complains that in spite of not knowing that Atkins could throw light upon the disputed injury, it had used due diligence and care to find him but had been unsuccessful until after the trial. With this last, we cannot agree. The accident occurred in January, 1946, and the second trial was concluded on September 22, 1947. Mr. Atkins had lived in Houston and worked for the same company for eight years or more. It should have been a simple matter, within a year and eight months, to get his correct name and to trace him. We think appellant's failure to do so constitutes a lack of diligence. For that reason and for the further reason that the newly discovered evidence in both instances was merely cumulative, no abuse of discretion resulted from the trial court's denial of the motion.

Appellant's criticism of the court's charge to the jury and its complaint of the court's refusal to give requested instructions, we think without merit. The charge was sufficiently clear. The objections to it are technical, and upon the whole it was fair, correctly stated the law, and, further, sufficiently covered the points with respect to which special instructions were requested.

The judgment appealed from is affirmed.