

# SUPREME COURT OF MISSOURI
## en banc

JANET S. DELANA, INDIVIDUALLY,   )
AND AS THE WIFE OF DECEDENT   )
TEX C. DELANA,   )
  )
                  Appellant,   )
  )
vs.   )     No. SC95013
  )
CED SALES, INC., D/B/A ODESSA GUN &   )
PAWN, CHARLES DOLESHAL, AND   )
DERRICK DADY,   )
  )
              Respondents.   )

## APPEAL FROM THE CIRCUIT COURT OF LAFAYETTE COUNTY
### Honorable Dennis A. Rolf, Judge

*Opinion issued April 5, 2016*

Janet Delana (Appellant) filed suit against CED Sales Inc. d/b/a Odessa Gun &

Pawn, Charles Doleshal, Brett Doleshal,[1] and Derrick Dady (Respondents) alleging

claims for negligence, negligent entrustment, and negligence per se.[2] Appellant alleged

that Respondents negligently sold or entrusted a gun to Appellant's mentally ill daughter,

who then used the gun to kill Appellant's husband. The circuit court entered summary

judgment in favor of Respondents. The court determined that Appellant's negligence

claim was preempted by the Protection of Lawful Commerce in Arms Act, 15 U.S.C.

section 7901, *et seq*., (PLCAA); that Appellant's negligent entrustment claim failed to

---

[1] Appellant voluntarily dismissed her claim against Brett Doleshal.
[2] Appellant voluntarily dismissed her negligence per se claim.

state a claim under Missouri law; and, therefore, that Appellant's individual claims against Mr. Doleshal and Mr. Dady were moot. The judgment is reversed to the extent it precludes Appellant from proceeding with her negligent entrustment claim. The judgment is affirmed in all other respects, and the case is remanded.[3]

## I. Background

Viewed in the light most favorable to Appellant as the non-moving party, the record indicates that on June 25, 2012, Appellant telephoned Odessa Gun & Pawn and asked Mr. Dady, the store manager, to refrain from selling a gun to her daughter, Colby Weathers. Appellant told Mr. Dady that Ms. Weathers was severely mentally ill and should not have a gun. Appellant also told Mr. Dady that Ms. Weathers had purchased a gun at Odessa Gun & Pawn the previous month and attempted to commit suicide. Appellant informed Mr. Dady of Ms. Weathers' full name, social security number and birthdate and told him that Ms. Weathers would likely attempt to purchase another gun after receiving her social security disability payment. Appellant told Mr. Dady, "I'm begging you. I'm begging you as a mother, if she comes in, please don't sell her a gun."

Two days after Appellant begged Mr. Dady to refrain from selling a gun to Ms. Weathers, Mr. Dady sold Ms. Weathers a gun and ammunition. Within an hour of the sale, Ms. Weathers shot and killed Tex Delana – her father and Appellant's husband – with the gun she had just purchased from Respondents.

The State charged Ms. Weathers with murder. The State determined that

---

[3] This Court has jurisdiction over the appeal because Appellants challenge the validity of the PLCAA. Mo. Const. art. V, sec. 3.

Ms. Weathers suffered from persistent "severe psychotic mental illness," including schizophrenia. The State concluded that on the day of the shooting, Ms. Weathers' mental illness rendered her "incapable of appreciating the nature, quality, or wrongfulness of her conduct." The circuit court accepted Ms. Weathers' plea of not guilty by reason of mental disease or defect and ordered her committed to the Missouri Department of Mental Health.

Appellant then filed the instant wrongful death action alleging that Odessa Gun & Pawn was liable under theories of negligence, negligence per se and negligent entrustment. Appellant alleged that Mr. Doleshal was individually liable because he was a principal of CED Sales Inc. and controlled the corporation to such an extent that the corporation was an "alter ego" of Mr. Doleshal. Appellant also allged that Mr. Dady was individually liable.

Mr. Dady testified that he had "a little bit" of training regarding gun sales. Mr. Doleshal testified that this training included instructing his employees to never deny a sale to someone who, like Ms. Weathers, passed the required background check. The record also indicates that prior to the sale, Mr. Dady recognized Ms. Weathers from when she had purchased a gun the previous month. Mr. Dady also recalled that Ms. Weathers appeared "a little nervous and in a hurry." Ms. Weathers later testified that she had heard "overwhelming" voices that "inundated her, telling her strongly that she … needed to kill herself." Medical evaluations indicated that Ms. Weathers' severe mental illness would have been apparent to Mr. Dady.

Respondents moved for summary judgment on grounds that the PLCAA preempted Appellant's claims. Appellant argued that the PLCAA did not preempt her claims and, alternatively, that if the PLCAA does preempt her claims, the statute is unconstitutional. The United States of America intervened for the purpose of defending the constitutional validity of the PLCAA.

The trial court entered summary judgment for Respondents on the negligence and negligent entrustment claims. The court held that the PLCAA preempted Appellant's negligence claim and that the statute was constitutional. The court also determined that although the PLCAA provides an exception for negligent entrustment actions, Missouri law does not recognize a cause of action for negligent entrustment against sellers. This appeal followed.

## II. Standard of Review

A summary judgment will be affirmed on appeal when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp*., 854 S.W.2d 371, 380 (Mo. banc 1993). The Court reviews the record in the light most favorable to the non-movant and affords that party the benefit of all reasonable inferences from the record. *Id.* at 376. Appellant's argument that the PLCAA is unconstitutional raises legal issues subject to de novo review. *Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 327(Mo. banc 2015).

## III. The PLCAA Preempts Appellant's Negligence Claim

Appellant asserts that the trial court erred by entering judgment for Respondents on grounds that the PLCAA preempts state law negligence actions against firearms

4

sellers. Appellant's negligence claim is preempted by the PLCAA. The trial court did not err by entering judgment in favor of Respondents on Appellant's negligence claim.

The PLCAA provides that "[a] qualified civil liability action may not be brought in any Federal or State court." 15 U.S.C. section 7902(a). All qualified civil liability actions "shall be immediately dismissed by the court in which the action was brought or is currently pending." 15 U.S.C. section 7902 (b). The PLCAA defines a "qualified civil liability action" as "a civil action ... brought by any person against a ... seller of a qualified product ... for damages ... resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." 15 U.S.C. section 7903(5)(A). A "qualified product" includes firearms and ammunition. 15 U.S.C. section 7903(4). Actions based on negligence per se, negligent entrustment, and knowing violations of state or federal statutes related to firearms are expressly excluded from definition of a "qualified civil liability action." 15 U.S.C. section 7903(5)(A)(ii).[4] The net result of the foregoing provisions is that the PLCAA expressly preempts all civil actions seeking damages against sellers resulting from the criminal or unlawful misuse of a firearm. *Noble v. Shawnee Gun Shop, Inc.*, 409 S.W.3d 476, 479 (Mo. App. 2013).

Appellant's negligence claim is based on her allegation that Respondents had a "heightened duty of care" with respect to the sale of "lethal instrumentalities." Appellant alleged that the "[b]reach of this duty is negligence" and that Mr. Delana's death resulted

---

[4] The PLCAA also provides exceptions for actions: (1) in which the transferor was convicted under the Gun Control Act or a comparable law; (2) in which a manufacturer or seller violated a law; (3) for breach of contract of warranty; (4) for product liability; and (5) commenced by the Attorney General under the Firearms Chapter of the United States Code. 15 U.S.C. sections 7903(5)(A)(i, iii-vi).

from Respondents' negligence. Appellant's negligence claim, there, is a "qualified civil liability action" subject to immediate dismissal pursuant to section 7902(b) of the PLCAA. The specific exceptions for negligent entrustment and negligence per se confirm that the PLCAA preempts common law state tort actions, like Appellant's negligence claim, that do not fall within a statutory exception. *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013) ("reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage"); *Phillips v. Lucky Gunner*, LLC, 84 F. Supp. 3d 1216, 1226 (D. Colo. 2015); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013) (the PLCAA "unequivocally" bars ordinary negligence claims); *Ileto v. Glock, Inc*., 565 F.3d 1126, 1135 (9th Cir. 2009) (the PLCAA preempts "general tort theories of liability" including "classic negligence" claims.).

Appellant argues that her negligence action is not preempted because she is not seeking the recovery of damages "resulting from the criminal or unlawful misuse" of a firearm because Ms. Weathers was found not guilty by reason of mental disease or defect. This argument fails because PLCAA preemption is based on "criminal or unlawful misuse" and not the existence of a criminal conviction. *See Adams v. Sheahan*, 909 N.E.2d 742 (Ill. 2009) (PLCAA preemption applied when there was no criminal conviction because the shooter was a juvenile). Ms. Weathers engaged in criminal or unlawful misuse of a firearm when she shot and killed her father because her plea of not guilty by reason of mental disease or defect "establishes that [she] committed a criminal

6

act and that [she] committed the act because of mental illness." *Greeno v. State*, 59 S.W.3d 500, 504 (Mo. banc 2001).

Appellant also argues that her negligence action is not preempted because her negligence action does not seek damages resulting from the misuse of a firearm by Ms. Weathers but, instead, seeks damages resulting from Respondents' negligent sale of a gun to Ms. Weathers. While Appellant's negligence claim seeks damages for Respondent's negligent sale, it is also true that Appellant's claim is premised on damages that resulted from Ms. Weathers' criminal or unlawful misuse of the firearm supplied to her by Respondents. The PLCAA expressly preempts all general negligence actions seeking damages resulting from the criminal or unlawful use of a firearm, including those involving "concurrent causation." *Coxe*, 295 P.3d at 387.

Appellant next argues that congressional debates and the stated purposes of the PLCAA demonstrate that the PLCAA does not preempt negligence actions against firearms sellers. For instance, Congress provided that the PLCAA was motivated by "[t]he possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system," 15 U.S.C. section 7901(a)(6), and that the statute's purpose is to prohibit "causes of action against ... dealers ... of firearms ... for the harm solely caused by the criminal or unlawful misuse of firearm products ... by others when the product functioned as designed and intended." 15 U.S.C. section 7901(b)(1). Appellant also notes that a prior version of the PLCAA that failed to pass the Senate did not state that the purpose of the statute was to prevent harm caused "solely" by criminal or unlawful misuse of firearms by third parties. Appellant asserts that the eventual

7

inclusion of this language proves that the PLCAA does not preempt negligence claims against firearms sellers.

The general statement of the purpose of the PLCAA does not redefine the plain language of a statute. *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 245 (1989) (Congress' expressed purpose does not alter plain statutory language); *see also* 2A Sutherland, Statutes and Statutory Construction section 47.04, at 146 (5th ed.1992, Norman Singer ed.) ("The preamble cannot control the enacting part of the statute in cases where the enacting part is expressed in clear, unambiguous terms."). Therefore, the statement of purpose does not overcome the fact that the specific substantive provisions of the PLCAA expressly preempt all qualified civil liability actions against firearms sellers, including claims of negligence. *Coxe*, 295 P.3d at 387 (reliance on congressional statement of purpose would "elevate the PLCAA's preamble over the substantive portion's clear language."). Appellant's reliance on congressional debates fails for the same reason. *Id*.

Finally, Appellant argues that this Court must narrowly construe the PLCAA to avoid federalism issues that accompany the federal preemption of Appellant's state law negligence action. This argument is also without merit.

Federal law can preempt state law expressly, by implication through "field preemption," or when a state law conflicts with federal law. *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012). When analyzing whether a federal statute constitutes field preemption of state law, courts must respect traditional state police powers and decline to find preemption unless Congress' intent to preempt state law is "clear and manifest." *Id*.

8

at 2501.   Conversely, when Congress expressly preempts state law pursuant to its constitutionally delegated legislative power, a court's "sole task" in determining whether the federal statute preempts state law is "to ascertain the intent of Congress."  *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280, (1987) (citations omitted).

Appellant argues that *Gregory v. Ashcroft*, 501 U.S. 452 (1991), and *Bond v. United States*, 134 S. Ct. 2077 (2014), require this Court to narrowly construe the PLCAA to avoid federalism issues.  *Gregory* and *Bond* involved implied preemption.  In both cases, the Court held that expansive statutory definitions should be narrowly construed to avoid excessive federal intrusion into traditional issues of state concern. *Gregory*, 501 U.S. at 460; *Bond*, 134 S. Ct at 2088, 2091-92.[5]  G*regory* and *Bond* are not applicable to this case because the PLCAA expressly and unambiguously preempts state tort law, subject to the enumerated exceptions.  This preemption is accomplished pursuant to Congress's constitutional power to regulate interstate commerce.  *See* 15 U.S.C. section 7901(b)(4) ("The purpose[ ] of this chapter … [includes the prevention] of such lawsuits to impose unreasonable burdens on interstate and foreign commerce"); *United States v. Lopez*, 514 U.S. 549, 561-62 (1995) (the Commerce Clause authorizes congressional regulation of firearms possession); *Ileto*, 565 F.3d at 1140-41 ("We have no trouble concluding that Congress rationally could find that, by insulating the firearms

---

[5] In *Gregory*, the issue was whether the definition of "employee" in the Age Discrimination in Employment Act of 1967, 29 U.S.C. sections 621-634, preempted the mandatory retirement age for state judges required by article V, section 26 of the Missouri Constitution.  501 U.S. at 455. In *Bond*, the issue was whether the definition of "chemical weapons" in a statute implementing an international convention  prohibiting chemical weapons applied to a "purely local crime" involving the defendant's attempt to poison her husband's paramour.  134 S. Ct. at 2083.

industry from a specified set of lawsuits, interstate and foreign commerce of firearms would be affected.").  Because Congress has expressly and unambiguously exercised its constitutionally delegated authority to preempt state law negligence actions against sellers of firearms, there is no need to employ a narrow construction to avoid federalism issues.  *Coxe*, 295 P.3d at 387.

## IV.  The PLCAA is Constitutional

Appellant argues that if the PLCAA preempts her negligence claim, the statute is unconstitutional.  Appellant first argues that the PLCAA violates the Tenth Amendment by "dictating to Missouri how it must delegate its lawmaking function among its governmental branches."  Specifically, Appellant argues that the PLCAA denies Missouri's judiciary the power to recognize and adjudicate otherwise valid common law claims while allowing the Missouri General Assembly to enact laws regulating the sale and marketing of firearms to serve as a predicate for a valid action for damages.  This argument is without merit.

The Tenth Amendment provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."  When a federal statute is an exercise of Congress' constitutionally delegated legislative authority, the federal statute does not violate the Tenth Amendment unless the statute commandeers a state's executive officials, *Printz v. United States,* 521 U.S. 898, 933 (1997), or legislative processes, *New York v. United States,* 505 U.S. 144, 161–66, (1992).  *See City of New York v. Beretta U.S.A Corp.*, 524 F.3d 384, 396-97 (2d. Cir. 2008).  The PLCAA does not commandeer the executive or

legislative branch of Missouri government. The PLCAA requires only that Missouri state courts, consistent with the Supremacy Clause, immediately dismiss any preempted action for civil liability. The PLCAA does not violate the Tenth Amendment. *Coxe*, 295 P.3d at 388-89; *Beretta,* 524 F.3d at 397; *Adames v. Sheahan*, 909 N.E.2d 742, 764–65 (Ill. 2009).

Appellant also argues that the PLCAA violates the Due Process Clause of the Fifth Amendment of the United States Constitution by depriving her of a cause of action without a substitute remedy. In this case, the PLCAA limits Appellant's remedies but does not eliminate a remedy because, as this Court holds below, the statute does not preempt Appellant's state law negligent entrustment action. The PLCAA does not violate Appellant's federal due process rights. *See Coxe*, 295 P.3d at 390; *Ileto*, 565 F.3d at 1143–44.

Appellant's negligence claim is preempted by the PLCAA, and she has not established that the PLCAA is unconstitutional. The trial court did not err by entering judgment for Respondents on Appellant's negligence claim.

V. Appellant's Negligent Entrustment Action is not Preempted by the PLCAA

The preemption of Appellant's negligence action leaves open the issue of whether Appellant has a viable claim for negligent entrustment. The PLCAA provides that negligent entrustment actions are not preempted, 15 U.S.C. section 7903(5)(A)(ii). The statute does not, however, establish a cause of action for negligent entrustment. 15 U.S.C. section 7903(5)(C). Therefore, "a state-law claim may continue to be asserted, even if it is not denominated as a 'negligent entrustment' claim under state law, if it falls within the

11

definition of a 'negligent entrustment' claim provided in" the PLCAA. *Noble*, 409

S.W.3d at 480.

> The PLCAA defines non-preempted negligent entrustment actions as involving:
>
>> the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. section 7903(5)(B). Appellant's negligent entrustment claim fits within the

statutory definition. Appellant alleges that Respondents sold a gun to Ms. Weathers with

knowledge that she would likely use the gun in a manner that would pose an

unreasonable risk of physical harm to herself or others. The trial court concluded that

Respondents were entitled to judgment because, even if Appellant's claim is not

preempted by the PLCAA, Missouri law does not recognize a cause of action for

negligent entrustment against a seller.

Missouri law defines the tort of negligent entrustment with reference to section

390 of the Restatement (Second) of Torts. *Evans v. Allen Auto Rental & Truck Leasing

Co.*, 555 S.W.2d 325, 326 (Mo. banc 1977); *see also Fowler v. Park Corp.*, 673 S.W.2d

749, 753 (Mo. banc 1984) (holding that a negligent entrustment instruction was proper, in

part, because it was consistent with the Restatement); *Trow v. Worley* 40 S.W.3d 417,

424 (Mo. App. 2001) (citing *Evans* and the Restatement to define the elements of

negligent entrustment); *LeCave v. Hardy*, 73 S.W.3d 637, 640 (Mo. App. 2002) (same);

*Hays v. Royer*, 384 S.W.3d 330, 335-36 (Mo. App. 2012) (applying the Restatement to

12

affirm a judgment permitting recovery for negligent entrustment).  Section 390 of the Restatement defines "negligent entrustment" as follows:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

As section 390 establishes, negligent entrustment liability is not premised on the legal status of the transaction as a lease, sale, bailment or otherwise.  Instead, negligent entrustment occurs when the defendant "supplies" a chattel to another with actual or constructive knowledge that, "because of youth, inexperience or otherwise," the recipient will likely use the chattel in a manner that will result in an unreasonable risk of physical harm.  Any doubt regarding the applicability of section 390 in the context of a sale is resolved by comment (a), which provides that negligent entrustment liability under section 390 attaches to any supplier, including "**sellers**, lessor, donors or lenders …." (Emphasis added).

Like the Restatement, Missouri common law recognizes that the defendant's status as a seller does not preclude liability when the defendant sells a dangerous product to a purchaser with knowledge that that the purchaser will likely be unable to use the product without posing an unreasonable risk of physical harm to herself or others. For instance, in *Bosserman v. Smith*, 226 S.W. 608, 609 (Mo. App. 1920), the court held that the defendant was liable for selling dangerous fireworks to two young children because the defendant "knew, or should have known" of the danger in selling the

13

fireworks to the children. *Id.* Likewise, in *Tharp v. Monsees*, 327 S.W.2d 889, 891 (Mo. banc 1959), this Court accepted the proposition that the owner of a gas station who sold gasoline to a child could be liable for negligence, although the court held the evidence in that particular case did not support a finding of negligence because the defendant had no reason to know that the boy "would make any dangerous or improper use of the small quantity of gasoline sold. . . ." *Id.* at 898. The fact that *Bosserman* and *Tharp* were analyzed in terms of "negligence" rather than "negligent entrustment" is not dispositive because both cases recognized that a seller was exposed to liability for selling a potentially dangerous product to individuals with actual or constructive knowledge that the purchaser's would likely be unable to utilize the product safely. The standard of liability explained in *Bosserman* and *Tharp* is consistent with the Restatement's definition "negligent entrustment" and with the PLCAA's definition of a non-preempted negligent entrustment claim. Although the Restatement premises negligent entrustment liability on the act of supplying an individual with a chattel, *Noble v. Shawnee Gun Shop, Inc.*, 409 S.W.3d at 481, held that an action against a business that sold firearms accessories to a murderer was preempted by the PLCAA because Missouri law does not recognize negligent entrustment liability in the context of a sale. *Noble* did not cite the definition of "negligent entrustment" as set forth in the Restatement. Instead, *Noble* relied on *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572 (Mo. App. 1998), and *Fluker v. Lynch*, 938 S.W.2d 659 (Mo. App. 1997), to conclude that Missouri law does not permit a negligent entrustment action against a seller. Neither case is persuasive.

14

In *Sansonetti*, the court held that the plaintiff could not maintain a negligent entrustment action against the seller of an automobile because the seller "permanently relinquished the car" to the driver so there "was no entrustment [and] he was not liable under a negligent entrustment theory as a matter of law …." 976 S.W.2d at 578-79. To reach this conclusion, *Sansonetti* relied entirely on *Fluker*. *Id.* In *Fluker*, the court concluded, with no citation to authority, that a negligent entrustment action cannot be maintained against a seller of a vehicle because:

> From the standpoint of both parties, the car had been permanently relinquished to Lynch. Thus, we conclude that this case is not a negligent entrustment case. If anything, it is a claim of "negligent sale" of a vehicle. No such theory has been pleaded; and, although plaintiffs hint at such an idea in their brief, plaintiffs provide us with no authority for such a theory.

938 S.W.2d at 662.

*Noble*, *Sansonetti* and *Fluker* are inconsistent with this Court's definition of "negligent entrustment" according the Restatement and with Missouri precedent holding that a seller is liable for selling a dangerous item with knowledge that the buyer is unlikely to safely possess the item. Irrespective of what the claim is called, Missouri law authorizes claims that fit within the PLCAA's definition of a non-preempted claim for "negligent entrustment." Appellant alleges that Respondents supplied a firearm and ammunition to Ms. Weathers with knowledge that Ms. Weathers' possession of a firearm posed an unreasonable risk of harm to herself and others due to her severe, ongoing

15

mental illness.  The fact that Respondents supplied the firearm to Ms. Weathers through a sale does not preclude Appellant's negligent entrustment claim.[6]

The trial court erred in granting judgment in favor of Respondents on Appellant's claim for negligent entrustment.  This claim is not preempted by the PLCAA and is recognized by Missouri law.

## VI. Individual Liability

Appellant argues that the trial court erred in entering judgment in favor of Mr. Dady and Mr. Doleshal on Appellant's claim that both men were individually liable based on a corporate veil piercing theory.  The trial court entered judgment for Mr. Dady

---

[6] This conclusion is consistent with the weight of authority from other jurisdictions.  *See, e.g.*, *Coxe*, 295 P.3d at 394-95 (state law permits negligent entrustment claim against a firearms seller); *Rains v. Bend of the River*, 124 S.W.3d 580, 596-97 (Tenn. Ct. App. 2003) ("Tennessee law can accommodate a claim for negligent entrustment of handgun ammunition"); *Morin v. Moore*, 309 F.3d 316, 324 (5th Cir. 2002) (Texas law would recognize a negligent entrustment action against a defendant who permitted a "psychologically unstable" person to have an assault rifle); *Ireland v. Jefferson Cnty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1229 (D. Colo. 2002) (Colorado law permits a negligent entrustment action against the seller of a firearm because "the theory of negligent entrustment as set out in Restatement (Second) of Torts § 390 applies to anyone who supplies a chattel for the use of another, including sellers."); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1064 (N.Y. 2001) (negligent entrustment is based on the supplier's knowledge and "[g]un sales have subjected suppliers to liability under this theory."); *Kitchen v. Kmart Corp.*, 697 So. 2d 1200, 1202-08 (Fla. 1997) ("We hold that an action for negligent entrustment as defined under section 390 of the Restatement is consistent with Florida public policy in protecting its citizens from the obvious danger of the placement of a firearm in the hands of an intoxicated person"); *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1539 (S.D. Ga. 1995) (Georgia law follows the Restatement and authorizes negligent entrustment liability for selling a firearm to a mentally ill individual); *First Trust Co. of North Dakota v. Scheels Hardware & Sports Shop, Inc.*, 429 N.W.2d 5, 8 (N.D. 1988) (applying Restatement section 390 to hold that a gun dealer could be liable for negligent entrustment); *Bernethy v. Walt Failor's, Inc.*, 653 P.2d 280, 283 (Wash. 1982) (same).

and Mr. Doleshal on grounds that Appellant's claim was moot because her negligence and negligent entrustment claims were not viable. Appellant's negligent entrustment claim is viable. Therefore, the trial court erred in granting judgment on Appellant's individual claims for negligent entrustment on grounds that those claims are moot.

## VII. Conclusion

The judgment is reversed to the extent that it precludes Appellant from proceeding with her negligent entrustment claims. The judgment is affirmed in all other respects, and the case is remanded.

_____
Richard B. Teitelman, Judge

All concur.